and the first case is Gibbs v. Covello which is consolidated with Cahill v. Montgomery and I understand that counsel for Mr. Gibbs and Mr. Cahill have apportioned their time, is that correct? Yes. Alright so is Ms. Casadio going first? Yes. That's you? Okay. Alright so Ms. Casadio how much time has been allotted to you? Ms. Casadio you may proceed. I'm sorry so what's your clock effectively you'll stop at 8 and then we'll have Ms. Arpa for 6 minutes. Yes I'd like 2 minutes to rebuttal. Then you're going to go for 4 minutes? Yes. Okay. Alright we'll start with 8 and 4. Ms. Casadio do you want to go first? Yes your honor. Thank you. May it please the court, Tracy Casadio for Petitioner Appellant Raymond Gibbs. Raymond Gibbs was convicted of first degree murder on the testimony of a single witness, Samuel Fisa. Although the witness testified as a police informant, subject to a proffer and plea agreement to reduce his own criminal charges, and although he was a suspect in a separate murder investigation, the trial court sustained roughly 55 objections to cross examination questions aimed at probing Fisa's credibility, prosecution bias, and motive to testify. This truncated cross examination was further constrained by undisclosed impeachment evidence defense counsel was denied access to prior to Fisa's testimony. And as I was, I believe Judge Murguia has a question but I believe she might be on mute. Judge Murguia we can't hear you. Can you hear me now? Yes. I'm sorry I must have been on mute. I'm sorry. You just talked about some, you were given a late discovery, you made some mention of late discovery. Help me understand the discovery process in this case because I think this is important for us to understand in resolving this case and addressing some of the important issues that you've raised. What discovery had actually occurred prior to the preliminary hearing and I'm trying to understand what was available to your client before the hearing took place because as I understand it there were 30 pages of additional discovery or what's been phrased as additional discovery that were given midway through the trial. So can you tell me what you were given and then what was additional information that you were given during the trial? Please. The first question is actually a difficult one your honor because we don't have trial counsel's files. What I believe would have been given at that time was the murder book in the case as well as Mr. Fisa's statements. What I know was not given at the time of the preliminary hearing was his informant file which established that he had received twice the amount of money that counsel understood him to have received for providing information to the police. That informant file also informed counsel that Mr. Fisa had been deemed an unreliable informant in 2009, a year before his preliminary hearing testimony. And I believe that there might have also been transcripts of interviews that Mr. Fisa did with detectives on other cases that were not provided until after the preliminary hearing and I have a specific site to that. Tell me the significance of those transcripts because I'm aware of the amount of money that's been talked about in the briefing. I'm also aware of the unreliable informant designation a year prior I guess to his testimony at the preliminary hearing. I'm trying to figure out what else is in those transcripts that you think is of significance that you should have been able to cross examine about. Mr. Gibbs attached a transcript to his habeas corpus petition. It involves an interview of Mr. Fisa with two detectives who are trying to get him to confess to the murder of Davon Childs. And during that interview the detectives represent to Mr. Fisa and I'm quoting, you have done a lot of good. That will be taken into consideration. And this is in the process of talking about the Davon Childs murder. That interview transcript is available at docket number 4-8 of the district court docket and that statement occurs at page 35 of that transcript. Mr. Gibbs was never able to confront Mr. Fisa with what his understanding was of that statement. Well tell me what would, what proper for me, what would have you think would have come out had you been given an opportunity or had his counsel at the time been given an opportunity to question him about that? Well I believe that Mr. Fisa if he was speaking truthfully would have had to admit that he still had expectations of some amount of leniency in his murder charges. And in fact the fact that we now know that Mr. Fisa pled guilty I believe based on the state court record of his trial. I believe he pled guilty and I believe that he has been housed in a low security facility which is very desirable to inmates and that would be a much greater, a much greater incentive to provide information in this case than Mr. Fisa's simply getting a deal on some burglary charges. So counsel may I, I'd like to clarify though was that your original, so I was, in my view it seems as though this has somewhat marked that original, your original argument was that the judge at the preliminary hearing so truncated your ability to cross examine Fisa separate from this other issue which I, I'm, I don't know quite how that was a confrontation cause issue or can it be made into a confrontation cause issue because the, the not having the documents was to me the judge said she or he was not going to order them to disclose the documents and the prosecutor was unwilling to disclose the documents because she didn't, as she said she didn't want to put the investigation in the hands of some gang members. Is that your same claim that you're making about lack of confrontation or is it something different more like a due process or prosecutorial misconduct? I believe it is the same claim your honor however I think that you would reach that part of the claim after you had found that 2254 D was satisfied so we're trying to rely on more traditional elements of confrontation to satisfy 2254 D. I believe that we have shown that we do satisfy that provision simply because of the truncated argument, the California Court of Appeals conclusion that counsel's question, counsel's cross examination was focused on irrelevant and minor topics as I and also the Court of Appeals conclusion that it, there was no prejudice, I'm sorry that Mr. Gibbs was not harmed because the evidence came in other ways. Those are all reasons to find 2254 D satisfied. I am watching the clock and I'm seeing I'm at time but of course your honors if you have more questions. Why don't we hear from counsel and then further discussion. We can go ahead and hear from the other counsel but well go ahead if I can ask this question. I'm trying to understand and would like to ask you how the trial court's decision made a difference here. I understand your position that Mr. Faiso was the main government witness but assume for a second that we agree with you on that point and we need to cross examine him at the preliminary hearing that you were cut off and didn't ask all the questions because it seems like you elaborated on that in your briefing. I guess my question is how did the trial court err then by making and limiting the cross examination? How did that actually harm your client? I'm having a hard time seeing how any additional questioning would have made a difference in this case considering we are in ETVA land and the jury seemed to have heard ample evidence about Mr. Faiso's bias and lack of credibility. Well indeed your honor this is quite like Davis where Mr. Faiso was a very evasive witness who was prone to not exaggeration but to diminish his own culpability and his own faults and really the trial court's constant sustaining of objections and admonishments of counsel gave Faiso cover to continue to provide not fully truthful answers. He could just continue to evade because he knew eventually that objection would come and be sustained. So it really did change how the jury was able to view him to say nothing of the fact that they actually didn't see him or hear him. Thank you. Okay Ms. Arpa you may proceed. Ms. Arpa. Yes thank you. May it please the court on behalf of Mr. Cahill. I listen to the court's questions and I think that there are two basic issues that I see. Number one the preliminary hearing testimony. I don't know why as a matter of law that that should be admitted because it really seems like because Crawford said preliminary hearing it should be admitted but preliminary hearings are very very limited. You do not get full cross examination. All the judge cares about all they want to hear is that whether there's probable cause. So you really in this case you really couldn't get a chance to confront and cross examine Mr. Faiso because all the court cared about they didn't care about the judge. That's all. Ms. Arpa were there any topics that the defendants wanted to ask where they were entirely precluded from asking at the preliminary hearing? Yes I put a list in my supplemental brief. There were a number of questions and I think what troubles me and I do a lot of trials myself is that the judge spent more time admonishing counsel. There was more discussion about you're taking too long and why don't we ask this question just to let them answer. Okay it was seven years is more than two. Something like that. They just spent so much time and you have a prosecutor who is constantly objecting to the questions. But I did on my supplemental brief I put a whole list of things that he couldn't cross examine about which is also it's on page 13 and 14 of my supplemental brief. They couldn't ask him about minimizing his motive so he could get less time. There were questions about his community service, what he told the judge when they took the plea, questions about his probation violation hearing, questions about his memory problems, questions about his drug use, questions about the other murder investigations, questions about how much money he got, whether he was under investigation, what he knew about that. All of those things and I know that counsel also put those in her brief, questions about receipt of relocation assistance which is a Brady issue that you would need to know about. So I think that there were a number of issues despite what the detective said about Fess' credibility and not only that, the prosecutor rehabilitated whatever the detective said by asking him okay well he was unreliable but then he was not unreliable with respect to Mr. Cahill. So you have all these questions about Mr. Cahill's reliability without even hearing from him. I mean this is what the problem is. In other words we are trying to rehabilitate him with questions that weren't even asked and then you have officers answering those questions. So this is the problem. Number one, insufficient preliminary hearing where there is constant bickering over the right to cross examine and you have three defendants and the judge already probably realizes he is going to make a decision because Mr. Fess has already made the decision that my client was involved. So and then you have when it gets to trial you can't even ask those questions but different things came out but you never got to hear what Mr. Fess would have said. So if the court has any questions on that I would be glad to answer them. Do you have a question Judge Miller? You need to unmute. We're muted. Judge Miller you're unmuted. We can't hear you. Judge Miller. Richard could you please make a comment on the question. Judge Miller unmute. Yes Judge I've looked at my controls and I do not have Judge as muted at this time. We can't hear you. Judge if you can hear me you might want to call in the number that I provided. Are you talking to Judge Miller? Richard? Yes Judge Wardlaw that was directed at Judge Miller for him to use the phone call to dial in to this video conference. Okay. There's apparently something wrong with the audio for this system. I guess that's what he's doing. Good afternoon counsel. Can you hear me now? Yes. Okay. Thank you. I see your time is up. I don't want to keep you up to time. I think the question that I was going to ask has been covered. Thank you. All right. You can each reserve a minute and let's hear from the defendants Cabello and Montgomery. Yes. Good afternoon your honors. May it please the court Deputy Attorney General Lindsay Boyd on behalf of the wardens. The California Court of Appeal reasonably found that admission of Samuel Fizer's preliminary hearing testimony comported with the confrontation clause. The question in this case ultimately hinges on whether the jury got an accurate picture of Fizer's credibility, his bias, and his motives for testifying. I would first turn to... Counsel I'm not sure that's the question. I guess that's what we're trying to figure out. Before you speed on to whether the jury got an accurate picture, I think we have to figure out whether or not the California Court of Appeals was unreasonable in its determination that there was no violation of the confrontation clause here. When we look at the confrontation clause analysis, I'd like you to focus on that. We have to see whether or not counsel were given an adequate opportunity to cross examine Mr. Fizer, especially in light of the fact that the confidential informant file was not at the time of the preliminary hearing. Do you agree that that is correct? That they were not given the file during the preliminary hearing? I would actually take issue with that, Your Honor. I would direct your attention to pages 581 and 582 of the excerpt of record, which is where the discussion regarding the turning over of the CRI file is discussed right before Detective Valento is called to testify. There's a brief discussion on the record about the 30 pages, which was brought in as part of the informant file, but both counsel and the trial court indicate that that information had been given to defense counsel prior to trial, certainly. Now, the question of what was turned over... That's my question, though, counsel. I understand it says during mid-trial, throughout the briefing, is when the information was given, but focus, if you could, for me, please, at the pre-trial conference. Were counsel given any information from the confidential file? I would agree with counsel for Gibbs that we don't have that information as part of the record, but I would say that there's no indication of a discovery issue in this case. It hasn't been raised in any of the prior proceedings. Counsel, throughout the briefing, I'm not sure if this is consistent with your argument in your briefing, because in your briefing, if I recall correctly, it seemed that there was no real strong argument made that this information was given to counsel before the pre-trial hearing. You're saying something different, at least from my recollection. Is that correct? Well, I'm just going to parse out that the information in the informant file, which was turned over, which was brought in mid-trial, that information was given to the defense at some point before trial. We don't know... It didn't come up in the discussions that happened before the preliminary hearing. What's discussed at the preliminary hearing has to do with the uncharged conduct, which at that point was in the investigatory stage regarding the Tarrant Street murder. In that case, the discussion that's on the record indicates that the prosecutor made defense counsel aware of all the information she had, and that it was to get the information of a pending investigation that was at that point in the hands of the sheriff's department would have had to have gone through the sheriff's department, and it would have been the responsibility of county counsel to come in and argue or dispute privilege. Listen, I'm asking because it seems like in your brief you argue that the fact that the petitioners received discovery after the preliminary hearing is inconsequential here. That seems how your brief reads. And so what I'm trying to figure out is your position that there is no confrontation clause violation in admitting preliminary hearing testimony of a key witness, even when the defense counsel did not have the benefit of the discovery to conduct cross-examination. It sounds like you're arguing something different now. I don't think we're arguing something different, Your Honor. I would say that the information in this case that was admitted, that came to light after the preliminary hearing, it was admitted at trial. If anything bolsters the defense counsel's already extensive cross-examination and impeachment of FISA. So the question of whether the standard in Van Arsdell and Davis is whether or not the jury would have gotten a significantly different view of FISA's credibility and motive for testifying had the information been admitted or the excluded information been brought in, or in this case, had he been confronted with the information at the preliminary hearing. I think both of our arguments, both in our answering brief and the supplemental briefing, is that the cross-examination at the preliminary hearing was extensive. If anything, the information that was admitted after only served to bolster the defense's already extensive impeachment of FISA. Excuse me, this is Judge Wardlaw. But the right of confrontation is the right to confront the witness, he or she, with the impeaching evidence. And that was what they weren't able to do, regardless of whether somehow it came in through someone else. It has a hugely different impact on a jury when they see the witness confronted. And then, of course, he also has to explain. And they see his reaction and his demeanor, and they judge his credibility. And as I understand it, in this case, there was, well, first of all, what I understood before the supplemental briefing and today was that you conceded that if there was error, you didn't argue harmlessness in your first brief, your answering brief, right? With respect to GEDS, correct, Your Honor. Why didn't you do that? I'm curious. I'm sorry to interrupt Judge Wardlaw, but why didn't you do that? If this court were to reach the conclusion that FISA's preliminary hearing testimony should have been stricken and kept out altogether, with respect to GEDS, that was the testimony that was tying him to the murder. With Khalil, there was other evidence. But I would agree with Counsel for GEDS that FISA's testimony ultimately was the crux of the prosecution's case against GEDS. In response to the earlier question, yes, the Confrontation Clause is concerned with confronting the witness and also with the jury's ability to observe the witness's response. However, the admission of a preliminary hearing transcript in the event that a witness is unavailable is a longstanding and firmly rooted exception to that rule, which is that under Crawford, if there's adequate opportunity to cross-examine the witness, then the preliminary hearing transcript is admissible. And there's nothing in the record in their allegations up until this point to indicate that any of those decisions were wrong, that FISA legitimately asserted his Fifth Amendment privilege, there was a hearing held, he was found to be unavailable, and his preliminary hearing testimony then comes in as long as the cross-examination is adequate. In this case, I would say as we did in our brief. Counsel? Yes. I have a few things just to clarify. Do you acknowledge then that the validity and that the, whether there was a constitutional violation here, that the case rises or falls on the adequacy of the cross-examination that was allowed at the preliminary hearing and not on other evidence that might have come in in some other way? I would say that the case rises or falls on whether or not, under, whether or not the California Code of Appeals reasonably applied the scattered and banal result, which is given the cross-examination that occurred, in addition to the other evidence that came in, would the jury have gotten a significantly different view of FISA's credibility? So, in this case, the... But aren't you conflating the harmless error there, Counsel? I mean, it seems like we have to determine whether or not there was a violation of the confrontation clause, which may allow for some room for prejudice. But it seems like what is very confusing from some of the arguments that have been made, including by the state and some by the petitioner, on whether or not we can rely on this other evidence. That, I think, has to be reserved for a harmless error analysis after we determine whether or not there was a violation of the confrontation clause. And so, I would, I guess, reassert the question that Judge Miller is asking you. Was that cross-examination at the preliminary hearing adequate? And isn't that what our focus should be first? So, I have two points to make on that. But I will answer your second question first, which is, yes, the cross-examination topics included by the leniency agreement, his proffer agreement, his fear of incarceration, the length of his possible sentence. In sum, pretty much every question that the defense, or that petitioner was in their brief, say was objected to and kept out was let in in other ways. So, it was merely the form of the question or the phrasing of the question. And, yes, with respect to some questions, there was back and forth between the trial court and defense counsel. But ultimately, that information all came in. With the second issue, your second point regarding the confrontation clause inquiry, under Van Arsdale, the question of whether or not the jury would have gotten a significantly different view of the witness' credibility and bias and motive is the confrontation clause analysis. And then, if a confrontation clause violation is found, then there's the five factors that Van Arsdale also sets out, which would, you would ultimately do a Brecht-Thomas error analysis using the five factors that are specified in Van Arsdale to kind of guide whether or not any error was harmless. But the first question of whether or not error existed does turn on whether or not the information that was kept out for cross-examination would have given the jury a significantly different view, because Van Arsdale recognizes that there's always going to be cross-examination that doesn't, that questions that aren't answered and information that's kept out. The question is, for the confrontation clause purposes, was the information that was kept out so important or so necessary to show an accurate portrayal of the witness' credibility? In this case, pretty much the only question that didn't have, at the preliminary hearing, the only question that was completely left unanswered was the question with regards to the Tarrant Street murder, which, at trial, the parties stipulated that FISA was guilty of. So pretty much everything else came in. Well, there was a discrepancy on the amount of money that he agreed that he got paid. Significant or insignificant is that. And ultimately, that information came in as well, and the jury heard the accurate information, and threw a witness who was also questioned about whether or not FISA was mischaracterizing, in his testimony, the amount that he was given. So, again, going back to the inquiry in Van Arsdale, whether or not the Court of Appeal reasonably applied that standard, the questions that FISA was asked were so extensive, and yes, there was a handful of information that wasn't available at the preliminary hearing, but the jury ended up getting it anyway. And so that part of Van Arsdale relates to the harmlessness of the error. It doesn't relate to whether or not there was an error. And I think that's the problem. It's that you don't argue it as a harmlessness question. You're arguing it as though there was no error. Well, I would say I read Van Arsdale differently. I think it's on page 680, where it talks about, there's a discussion of Davis, and then it goes into the question of bias versus general credibility, and then says, ultimately, the petitioner had met the burden because they showed that the jury would have gotten a significantly different view of the witness. And my reading of the case is that has to do with the first step, which is was there a complication clause error. And then the court goes on to discuss the harmless error analysis and the application of the factors of how to determine whether that witness' testimony, the admission of that testimony, harmful. But what they're talking about on page 680 is about prejudice, which is, you know, harmlessness. And the whole point of this whole case is the defendant was foreclosed, and the question before the court, a significant one, was, is that a per se, is that a structural error, or do we require some kind of harmless analysis? And then they go into what would make it harmless or non-prejudicial. Well, I see that I'm coming up on time, but I would just respond briefly. In this case, the defense wasn't foreclosed. They were able to ask pretty much every question at the preliminary hearing that they wanted to ask of FISA. And were able to get in all the impeaching evidence that came to light after the preliminary hearing. And the timing of when that evidence came to light, everything in this case seems to be proper and compliant with every court's rules. Counsel, how can you say that? I'm just curious, when they didn't have what sounds like a confidential file, or at least apart from the confidential informant file, that said he was an unreliable witness. How can you say that they had everything when they didn't have that? And then they didn't have that instead of being paid $7,200, he was paid $2,000 some odd. When you say they had everything, you just made a statement, they had everything they needed to cross-examine him. I'm just curious how you can make such a bold statement when you know that they didn't have that. The question is whether or not that was adequate. Or that proved the cross-examination to be inadequate, and I'm trying to figure out what your response is to that. My response would be that if you look at the questions that were asked at the preliminary hearing, the opportunity for cross-examination was more than adequate, and FISA was cross-examined extensively. Every case that deals with the admission of a preliminary hearing transcript, or in the case of an unavailable witness, acknowledges that there's a limited scope of the preliminary hearing, but that does not make the preliminary hearing testimony. But in this role, the question is whether or not the cross-examination was adequate. In this case, the information that they didn't have at that time came in anyway, and ultimately the jury was able to adequately assess FISA's credibility. May I ask one more question, Judge Wardlaw? Yes, go ahead. Counsel, what's your best case, I guess, for your argument that the inability to ask questions about discovery materials received after the hearing does not render the questioning inadequate? I guess I'm trying to get the answer to my previous question, because you focus a lot on Davis v. Alaska, but that case is concerned with cross-examination at trial. So discovery had already, I think, occurred in that case. So what's your best case for this scenario? Well, I would say that I think Davis and Danza are contrasting the facts in those cases with the facts in these cases probably is the most illustrative of our point. However, I would point you to the Peckett v. Dower case that we cited in the brief, which this court affirmed the lower court's decision on appeal. There was no confrontation clause violation in that case, and I think that case is definitely helpful. But I think the most lengthy discussions of the issue are probably still found in Davis and Danarsa. All right, thank you very much, Counsel. And I said that I gave both Ms. Casadio and Ms. Arthur a minute to respond. Thank you, Your Honor. I do believe that I heard Ms. Boyd concede that unless you consider the evidence admitted outside of the cross-examination, that she is unable to offer you persuasive reasons for why there was no confrontation clause violation here. And as we've discussed in our papers, you simply may not look at that other evidence to consider whether the confrontation clause was violated. I also want to point the court to Vasquez v. Jones, which is cited in Gibbs AOB, which finds that the trial court was wrong to admit preliminary hearing testimony when counsel did not have all of the discoveries. So that is a case that you can rely on. And finally, counsel was trying to pin Mr. FISA down on lies told under oath. It was stymied by the trial court's consistent, sustaining objection. But for the trial court's aggressiveness, counsel could have shown that FISA was lying under oath. Thank you, Your Honors. Thank you very much, Ms. Cassidio. Ms. Arthur? Yes, I would like to first point out, I think the Attorney General said somehow that without Mr. FISA's testimony, there was nothing against Mr. Gibbs. But something about there was against Cahill, and I disagree with that. Because Mr. Cahill, without FISA's testimony, his out-of-court statements and during telephone calls meant nothing. They meant nothing about this particular case. The sole witness was this unreliable, or reliable anyway, criminal informant. And I do believe that the preliminary hearing was inadequate. When I looked at the evidence that came in after the preliminary hearing during trial, I looked at it from a trial counsel's point of view. I mean, does he want to stop the trial at that point and then start all over again? I think it came somewhere in the middle of trial. And I think it was during the defense case, because that's when the police officers spoke, or they called them. So that was my feeling when I saw what happened. It just seemed to me that trial counsel didn't want to start all over again after getting these 30 pages of material and he was able to call the detective. So that's why he didn't call a mistrial. Anyway, he wanted to proceed with the trial. So that's what I feel about the additional information. But the additional information really didn't go to Mr. Kahle's right to confront and cross-examine Mr. Fessa with the similar interest and motive, which is what he needed. And just one other thing, I noticed that the court was, in counsel, interchanging trial judge versus the preliminary hearing. We call them magistrates in state court. And I think that the preliminary hearing magistrate was the one who initially denied Mr. Kahle his right to confront and cross-examine Kahle, because the trial court is the one where the actual trial is held. And I just wanted to make that clear so that there wouldn't be any confusion looking at the record as to which judge did what. All right. Thank you, counsel. Does the court have any questions? Does anyone have any questions? No, thank you. I think that's it. Thank you very much, counsel. Gibbs v. Cabello and Carrillo v. Montgomery are submitted. And we will take up Keiko v. County of Los Angeles.
judges: Wardlaw, Murguia, Miller